1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LOUIS JAMES THIBODEAUX,

                    Plaintiff,

      v.

RON HAYNES, *et al.*,

                   Defendants.

Case No. C21-5326-BHS-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a 42 U.S.C. § 1983 prisoner civil rights action. Plaintiff Louis Thibodeaux ("Plaintiff"), a *pro se* prisoner proceeding *in forma pauperis* ("IFP"), is currently confined at the Washington State Penitentiary ("WSP") in Walla Walla, Washington. Plaintiff has filed an amended complaint alleging violations of his Eighth Amendment rights stemming from his contraction of COVID-19 during his previous incarceration at the Stafford Creek Corrections Center ("SCCC"). (Am. Compl. (dkt. # 19) at 9-11.)

This matter is before the Court on: (1) Plaintiff's motion for summary judgment ("Plaintiff's Motion") (Pl.'s Mot. (dkt. # 37)); and (2) Defendants SCCC Superintendent Ron Haynes, Washington Department of Corrections ("DOC") Chief Medical Officer Sara Kariko, SCCC Facility Medical Director Ryan Herrington, SCCC Corrections Unit Supervisor ("CUS")

REPORT AND RECOMMENDATION - 1

1  Dennis Cherry, SCCC Officer David Christensen, and SCCC Food Services Manager Ron Attard's

2  ("Defendants") cross-motion for summary judgment ("Defendants' Cross-Motion") (Defs.'

3  Cross-Mot. (dkt. # 40)).[1] In addition, Defendants' reply in support of their Cross-Motion contained

4  a motion to strike ("Defendants' Strike Motion") a portion of an Office of Corrections Ombuds

5  Monitoring Report on SCCC ("OCO Report") that Plaintiff submitted in support of his Motion.

6  (Defs.' Strike Mot. (dkt. # 49).)

7       Having considered the parties' submissions, the governing law, and the balance of the

8  record, the Court recommends that: (1) Defendants' Strike Motion (dkt. # 49) be GRANTED; (2)

9  Plaintiff's Motion (dkt. # 37) be DENIED; and (3) Defendants' Cross-Motion (dkt. # 40) be

10  GRANTED, as further explained below.

**II.    BACKGROUND**

11

12  **A.    Procedural History**

13       On May 4, 2021, Plaintiff, along with two other inmates at the SCCC, filed an IFP

14  application and proposed complaint alleging Eighth Amendment claims arising from the SCCC's

15  handling of the COVID-19 pandemic, its internal COVID-19 protocols, and his contraction of

16  COVID-19. (Dkt. # 1.) On May 12, 2021, this Court issued an order to show cause due to IFP

17  deficiencies and improper joinder, and on May 26, 2021, Plaintiff filed a response. (Dkt. ## 11,

18  14.) Based on Plaintiff's response, this Court issued a Report and Recommendation

19  recommending that Plaintiff be granted IFP status and that he be allowed to proceed in this

20  action with the claims pertaining to him. (R. & R. (dkt. # 15) at 7.)

21

22  ---

[1] On August 27, 2021, Defendants filed a notice to the docket indicating that Defendant Christensen died
before the filing of the instant matter, and that Defendants' counsel is unaware of the identity of
23  Defendant Christensen's personal representative for his estate. (Dkt. # 30.) As such, Defendant
Christensen remains unserved. Nevertheless, Plaintiff concedes to dismissal of Defendant Christensen
with prejudice due to his passing. (*See* Pl.'s Strike Resp. (dkt. # 51) at 3.)

REPORT AND RECOMMENDATION - 2

1    On July 26, 2021, the Honorable Benjamin H. Settle adopted this Court's Report and

2  Recommendation, and Plaintiff's amended complaint was filed.[2] (Dkt. ## 18-19.) On July 29,

3  2021, this Court directed service of Plaintiff's amended complaint. (Dkt. # 22.) On September

4  27, 2021, Defendants filed their answer. (Answer (dkt. # 33).)

5    On October 19, 2021, Plaintiff filed his Motion. (Pl.'s Mot.) On November 5, 2021,

6  Defendants filed their response and Cross-Motion. (Defs.' Cross-Mot.) Defendants additionally

7  submitted declarations from Defendants' counsel, DOC Deputy Director of Health Services Scott

8  Russell, WSP Legal Liaison Rochelle Stephens, and Defendant Attard. (Feulner Decl. (dkt.

9  # 41); Russell Decl. (dkt. # 42); Stephens Decl. (dkt. # 43); Attard Decl. (dkt. # 44).) On

10  November 16, 2021, Plaintiff filed a combined response and reply. (Pl's. Resp. (dkt. # 47)). On

11  December 8, 2021, Defendants filed their reply, which contained their motion to strike. (Defs.'

12  Strike Mot.)

13    On December 9, 2021, this Court authorized Plaintiff to file a response to Defendants'

14  Strike Motion (dkt. # 50), which Plaintiff filed on December 14, 2021 (Pl.'s Strike Resp. (dkt.

15  # 51)). On December 17, 2021, Defendants filed their reply. (Defs.' Strike Reply (dkt. # 53).)

16  This matter is now ripe for the Court's review.

17    **B.    Factual Background**

18    Beginning in February 2020, DOC implemented several policies and procedures to

19  address the risk of COVID-19 to its inmates and staff. (Russell Decl. at ¶¶ 5, 7-8.) Among these

20  measures, DOC required screening and testing of all inmates and staff, isolation and quarantine

21  of affected individuals, medical care for individuals who tested positive for COVID-19,

22  preventative measures for high-risk inmates housed in certain units, and use of personal

23

---

[2] Plaintiff submitted his amended complaint to the Court on July 2, 2021, after the Report and Recommendation was issued but before it was adopted by Judge Settle. (*See* dkt. # 16.)

REPORT AND RECOMMENDATION - 3

1  protective equipment ("PPE") throughout its facilities. (*Id.* at ¶¶ 10, 15-21.) DOC's COVID-19

2  protocol ("Guideline") remains in place and continues to be updated. (*Id.* at ¶ 10; *see also id.*, Ex.

3  1 (dkt. # 42-1) at 2-95.)

4      On January 15, 2019, Plaintiff was transferred to SCCC. (Feulner Decl., Ex. 1 (dkt.

5  # 41-1) at 13; Am. Compl. at 3.) Per his amended complaint, Plaintiff alleges that at some

6  unidentified time in December 2020, he was infected with COVID-19 and that his exposure

7  came as a result of CUS Cherry bringing the virus into the H-1 Unit at the SCCC. (Am. Compl.

8  at 3,7.) Plaintiff further alleges he was subsequently transferred to the H-6 Unit at the SCCC,

9  where he was again exposed to COVID-19 by Officer Christensen. (*Id.* at 3.)

10     As a result of his exposures to COVID-19 from Defendants Cherry and Christensen,

11 Plaintiff alleges he contracted the virus and that he had to be hospitalized in January 2021 for six

12 days due to severe chest pain and respiratory complications. (Am. Compl. at 3.) Plaintiff notes

13 that he has several underlying health issues that put him at heightened risk for complications

14 because he is a 59-year-old African American male. (*Id.* at 7.) Plaintiff has also previously been

15 diagnosed with heart disease, chronic obstructive pulmonary disease ("COPD"), hypertension,

16 diabetes, and obesity. (*Id.*; *see also* Feulner Decl., Ex. 2 (dkt. # 41-1) at 16-19.) Plaintiff further

17 alleges that he has since suffered severe damage to his lungs and other vital organs, myocarditis,

18 and that he now requires portable oxygen as a result of his COVID-19 infection. (Am. Compl. at

19 8.)

20     Per Defendants' account, on November 30, 2020, Plaintiff was tested for COVID-19 and

21 received a positive result on December 4, 2020. (Feulner Decl., Ex. 2 at 60.). Plaintiff was tested

22 again on December 1, 2020, and that test also came back positive on December 7, 2020. (*Id.* at

23 62.) After his positive COVID-19 diagnosis, Plaintiff's vital signs were monitored by SCCC

REPORT AND RECOMMENDATION - 4

1    medical staff and remained stable. (*Id.* at 47-59.) Plaintiff was seen by SCCC medical staff on

2    December 4, December 10, and December 11, 2020. (*Id.* at 61, 63-64.) During those visits,

3    SCCC medical staff noted that he was experiencing mild COVID-19 symptoms, including cough

4    and shortness of breath. (*Id.*)

5         On December 14, 2020, Plaintiff was again seen by SCCC medical staff, but was noted as

6    asymptomatic. (Feulner Decl., Ex. 2 at 65.) During the period of time Plaintiff had COVID-19,

7    no inmate was transferred into his cell prior to his positive COVID-19 diagnosis, but one inmate

8    was transferred into his cell after he tested positive. (Stephens Decl. at ¶ 3.) On December 28,

9    2020, Plaintiff reported to SCCC medical staff during a visit that a third individual was planned

10   to be placed in his cell and that he was concerned about space. (Feulner Decl., Ex. 2 at 66.) As a

11   result, SCCC Physician Assistant Certified ("PAC") Erin Lystad issued Plaintiff a health status

12   report for a two-person cell due to the space required for Plaintiff's medical equipment. (*Id.* at

13   66-67.)

14        On January 7, 2021, Plaintiff tested negative for COVID-19. (Feulner Decl., Ex. 2 at 68.)

15   On January 19, 2021, Plaintiff received an inconclusive test for COVID-19. (*Id.* at 73-74.). On

16   January 22, 2021, Plaintiff was seen by SCCC medical staff for COVID-19 based on his

17   inconclusive test but was noted as asymptomatic. (*Id.* at 74.)

18        On January 27, 2021, Plaintiff complained of chest pain to SCCC medical staff, and he

19   was transferred to the Grays Harbor Community Hospital where he returned "an abnormal stress

20   test with reversible ischemia." (Feulner Decl., Ex. 2 at 75, 84.) Because the Grays Harbor

21   Community Hospital lacked cardiology services, Plaintiff was transferred to Capital Medical

22   Center in Olympia, Washington on January 29, 2021. (*Id.* at 84.) On January 31, 2021, Plaintiff

23   was discharged from the hospital in stable condition. (*Id.* at 84, 96.) Plaintiff was then housed in

REPORT AND RECOMMENDATION - 5

1   the SCCC infirmary for one night before being released back to his cell. (*Id.* at 96-98.) Plaintiff

2   told SCCC medical staff during his infirmary stay that his chest pain might be related to stress

3   stemming from having received a new cellmate. (Feulner Decl., Ex. 2 at 97; *see also* Stephens

4   Decl. at ¶ 3.)

5   　　Since his positive COVID-19 diagnosis in December 2020, Plaintiff has continued to

6   receive medical attention from DOC for his medical conditions. (Feulner Decl., Ex. 2 at 99-104.)

7   On June 22, 2021, Plaintiff was issued a portable oxygen tank as a result of his COPD and

8   hypoxia with exertion. (*Id.* at 105.) In September 2021, Plaintiff complained of chest pain on two

9   separate occasions, and received care both times at WSP and from a hospital but was not found

10   to be suffering from any acute cardiopulmonary abnormalities. (*Id.* at 107-08, 111-14, 118.) On

11   October 4, 2021, Plaintiff was seen by WSP medical staff in regard to his chest pain and

12   diabetes. (*Id.* at 119-26.)

13   　　**C.　　Plaintiff's Claims**

14   　　Plaintiff's first cause of action alleges a violation of his Eighth Amendment rights against

15   Defendants, and "Does 1-10," based on his conditions of his confinement at the SCCC due to

16   Defendants' handling of the COVID-19 pandemic and the SCCC's internal COVID-19

17   protocols.[3] (*See* Am. Compl. at 9-10.) Plaintiff alleges that he was unable to protect himself from

18   COVID-19, and that the virus was allowed to spread at the SCCC due to Defendants' actions.

19   (*Id.*)

20

21

22   [3] Plaintiff has not amended his complaint to include the identity of "Does 1-10," and therefore, such
    individuals remain unserved. Because Plaintiff has not sufficiently identified the Doe Defendants, he has
23   not shown that any of these intended Defendants personally participated in causing the alleged harm. *See
    Arnold v. IBM*, 637 F.2d 1350,1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir.
    1977).

REPORT AND RECOMMENDATION - 6

1       Plaintiff's second cause of action alleges that, pursuant to § 1983, Defendants Haynes,

2 Kariko, Herrington, Cherry, Attard, and "Does 1-10," instituted official policies and procedures

3 at the SCCC that deprived him of timely medical care, treatment, testing, effective COVID-19

4 PPE, and adequate segregated housing to mitigate COVID-19 exposures. (Am. Compl. at 10-11.)

5 Plaintiff further alleges under this cause of action that Defendants Haynes, Kariko, Herrington,

6 Cherry, Attard, and "Does 1-10," falsely reported to DOC that the SCCC followed COVID-19

7 avoidance procedures and that they negated the administrative process to provide him emergency

8 relief. (*Id.* at 11.)

9       Plaintiff seeks declaratory and injunctive relief, damages, and costs. (Am. Compl. at

10 11-14.) Specifically, Plaintiff requests a temporary restraining order or preliminary injunction

11 requiring Defendants to identify Plaintiff as a "medically vulnerable inmate," to identify an

12 expert to classify appropriate categories of release for him, to arrange for Plaintiff to be seen by

13 different physicians and for additional medical treatment, to release him to home confinement,

14 and to expunge all court fees, costs, and institutional debts from his record. (*Id.* at 11-14.)

15 Plaintiff additionally requests that his conditions and place of confinement be modified, and that

16 a portion of his sentence be stricken. (*Id.* at 12.) Finally, Plaintiff requests declaratory judgment

17 that the SCCC's COVID-19 policy violated his Eighth Amendment rights. (*Id.* at 13.)

18                       **III.    DISCUSSION**

19       Plaintiff's Motion seeks summary judgment based on his allegations that Defendants

20 violated his Eighth Amendment rights due to their alleged failure to protect him from contracting

21 COVID-19 at the SCCC.[4] (Pl.'s Mot. at 1-4, 12-16.) Specifically, it appears Plaintiff's Motion

22

_____

23 [4] In Plaintiff's Motion and Strike Response, and in an attached declaration that included several recent
medical kite exhibits, it appears Plaintiff attempts to raise retaliation and conditions of confinement
claims stemming from Defendants' grievance responses and his transfer to WSP, in addition to claims

REPORT AND RECOMMENDATION - 7

1    argues summary judgment is appropriate because Defendants placed a COVID-19 positive

2    inmate in his cell two days after he previously tested negative and that he contracted COVID-19

3    due to this exposure. (*Id.* at 9-10.) Defendants' Cross-Motion moves for summary judgment on

4    the basis that: (1) Plaintiff failed to establish deliberate indifference on the part of any named

5    Defendant; (2) Defendants are entitled to qualified immunity; and (3) Plaintiff failed to raise a

6    non-moot claim for declaratory or injunctive relief.[5] (Defs.' Mot at 12-19.)

7        As explained further below, the Court concludes there are no genuine issues of material

8    fact regarding Plaintiff's claims, Plaintiff fails to establish that Defendants violated his Eighth

9    Amendment rights, and that Defendants are entitled to summary judgment.[6]

10       **A.    Motion to Strike**

11       Defendants' Strike Motion requests that a portion of the OCO Report included in

12   Plaintiff's declaration submitted in support of his Motion be stricken. (Defs.' Strike Mot. at 2-3.)

13   The OCO Report attached to Plaintiff's declaration included a portion detailing two use of force

14   incidents that occurred at the SCCC against black individuals. (Pl.'s Decl. (dkt. # 48-1) at 38-48.)

15   Defendants argue that this portion of the OCO Report should be stricken as irrelevant and as

16

---

17   pertaining to Defendants' alleged failure to provide him with a heart healthy diet. (*See* Pl.'s Mot. at 2-4;
     dkt. # 38 at ¶¶ 6-7, 9-12; Pl.'s Strike Resp. at 4-6, 8; dkt. # 52 at ¶¶ 3-6.) However, such claims were not
18   raised in Plaintiff's amended complaint (*see* Am. Compl. at 9-11), and thus, the Court will not consider
     them on summary judgment. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir.
19   2008) (finding that a party generally cannot raise new claims at the summary judgment stage); *Wasco
     Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a
20   procedural second chance to flesh out inadequate pleadings.") (citation and internal quotation omitted).

21   [5] Because Plaintiff's allegations fail to demonstrate a violation of his Eighth Amendment rights in the first
     instance, the Court declines to address whether Defendants are additionally entitled to qualified
22   immunity. Qualified immunity protects officials "from liability for civil damages insofar as their conduct
     does not violate clearly established statutory or constitutional rights of which a reasonable person would
     have known." *Mullenix v. Luna*, 577 U.S. 7, 11, (2015); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
23   Here, a qualified immunity analysis is unnecessary because Plaintiff failed to demonstrate Defendants'
     alleged actions violated his Eighth Amendment rights.

REPORT AND RECOMMENDATION - 8

1   improper propensity evidence. (Defs.' Strike Mot. at 2-3.) Plaintiff submits that the OCO Report

2   is necessary because it is a "use of force on Black men at SCCC." (Pl.'s Decl. (dkt. # 48) at ¶ 2.)

3          In opposing summary judgment, when a party relies upon evidence that is inadmissible,

4   such evidence can be stricken by the court. *See* Fed. R. Civ. P. 56(c)(2); Local Civil Rule 7(g);

5   *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only

6   consider admissible evidence in ruling on a motion for summary judgment.") (citation omitted).

7   Here, the Court finds that the portion of the OCO Report challenged by Defendants should be

8   stricken as irrelevant. Plaintiff's claims do not include any allegations of use of force, there is no

9   evidence that named Defendants were involved in the incidents identified in the OCO Report,

10  and the events described in the OCO Report do not involve Plaintiff. (*See* Pl.'s Decl. at 38-48.)

11  Plaintiff claims the OCO Report is evidence of how "Defendants continuously file incident

12  reports as well [as] falsify documents to cover up their cruel and unusual demeanors." (Pl.'s

13  Strike Resp. at 4.) As such, it appears Plaintiff is also improperly seeking to use the OCO Report

14  as propensity evidence. *See* Fed. R. Evid. 404.

15         In any event, Plaintiff's Strike Response fails to rebut Defendants' Strike Motion and

16  instead argues the merits of his claims and other grievances that were not raised in his amended

17  complaint. (*See* Pl.'s Strike Response.) Consequently, the Court will not consider the portion of

18  the OCO Report regarding the two use of force incidents in its adjudication of the parties'

19  motions.

20  **B.    Motions for Summary Judgment**

21         First, in addressing the parties' motions, the Court notes that Plaintiff's amended

22  complaint was not signed under penalty of perjury. (*See* Pl.'s Am. Comp. at 15.) As such,

23  Plaintiff's amended complaint cannot be considered as evidence in seeking or opposing summary

1   judgment. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (finding in a *pro se* case, the

2   court will consider a complaint signed under penalty of perjury as evidence to the extent it is

3   based upon personal knowledge that would be admissible in evidence); *Schroeder v. McDonald*,

4   55 F.3d 454, 460 n.10 (9th Cir. 1995) (to be a "verified" complaint considered as evidence, the

5   complaint must be signed under penalty of perjury in compliance with 28 U.S.C. § 1746).

6          Nevertheless, even if the allegations in Plaintiff's amended complaint are considered, the

7   Court finds that Plaintiff fails to present sufficient evidence to support his claims in his Motion,

8   and that Defendants are entitled to summary judgment on their Cross-Motion.

9                    *i.*        *Legal Standards*

10                            1.        Summary Judgment

11         Summary judgment is appropriate when the "movant shows that there is no genuine

12  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

13  Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is

14  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

15  showing on an essential element of his case with respect to which he has the burden of proof.

16  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden

17  of showing the Court "that there is an absence of evidence to support the nonmoving party's

18  case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence

19  that negates an essential element of the nonmovant's case or by establishing that the nonmovant

20  lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins.*

21  *Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the

22  nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v.*

23

REPORT AND RECOMMENDATION - 10

1   *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in

2   favor of the nonmoving party. *Id.* at 585-87.

3        Genuine disputes are those for which the evidence is such that a "reasonable jury could

4   return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. The opposing party must

5   present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford*

6   *Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla

7   of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary

8   judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Likewise,

9   allegations that are based merely on a party's belief are insufficient to oppose summary

10  judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs*

11  *Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1

12  (9th Cir. 1987) (per curiam).

13       When parties file cross-motions for summary judgment, each motion "must be considered

14  on its own merits." *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d

15  1132, 1136 (9th Cir. 2001). The Court must review the evidence submitted in support of each

16  cross-motion and determine whether disputed issues of material facts are present. *Id.*

17                    2.        Section 1983 Claims

18       To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a

19  violation of his rights protected by the Constitution or created by federal statute; and (2) the

20  violation was proximately caused by a person acting under color of state law. *West v. Atkins*,

21  487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the

22  second prong, a plaintiff must allege facts showing how individually named defendants caused or

23  personally participated in the harm alleged in the complaint. *Arnold*, 637 F.2d at 1355. The

1    causation requirement of § 1983 is satisfied only if a plaintiff demonstrates a defendant did an

2    affirmative act, participated in another's affirmative act, or omitted to perform an act he was

3    legally required to do that caused the deprivation complained of. *Id.* (citing *Johnson v. Duffy*,

4    588 F.2d 740, 743-44 (9th Cir. 1978)).

5                    *ii.        Plaintiff's Motion*

6        The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits conditions of

7    confinement that involve the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475

8    U.S. 312, 319 (1986); *see Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). A prisoner claiming an

9    Eighth Amendment violation based on conditions of confinement "must show (1) that the

10   deprivation he suffered was 'objectively, sufficiently serious'; and (2) that prison officials were

11   deliberately indifferent to his safety in allowing the deprivation to take place." *Morgan v.*

12   *Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834

13   (1994)).

14       To establish an Eighth Amendment violation related to medical care, an inmate must

15   prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

16   medical needs." *Estelle*, 429 U.S. at 106; *see also Clouthier v. County of Contra Costa*, 591 F.3d

17   1232, 1241 (9th Cir. 2010). Prison officials may be deemed to have been deliberately indifferent

18   to an inmate's serious medical needs "when they deny, delay, or intentionally interfere with

19   medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citations and internal

20   quotation marks omitted). However, a prison official may be held liable "only if he knows that

21   inmates face a substantial risk of serious harm and disregards that risk by failing to take

22   reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

23       In this case, Plaintiff's Motion and submitted evidence regarding his contraction of

1  COVID-19 neither aligns with his claims as articulated in his amended complaint nor does it

2  demonstrate that any of the named Defendants were deliberately indifferent to his safety. First,

3  Plaintiff's Motion fails to supply a theory or argument for how he contracted COVID-19 from an

4  alleged exposure from CUS Cherry or Officer Christensen, which was previously alleged in his

5  amended complaint. (*Compare* Am. Compl. at 2 *with* Pl.'s Mot.) Plaintiff's Motion and response

6  appear to instead allege he is entitled to summary judgment against Defendants because he tested

7  negative for COVID-19 on November 30, 2020, but tested positive two days later on December

8  1, 2020, as a result of Defendants' placement of a COVID-19 positive inmate in his cell on

9  December 7, 2020.[7] (*See* Pl.'s Mot. at 9-10; Pl.'s Resp. at 2-3.) Plaintiff additionally submits that

10  PAC Lystad noted he was exposed to COVID-19 at SCCC by another inmate. (Pl.'s Resp. at 2.)

11      However, Plaintiff's submitted documentation from his COVID-19 testing on November

12  30, 2020, accords with Defendants' submission of the same testing and demonstrates that his

13  November 30, 2020 test was—in fact—positive. (*Compare* Pl.'s Resp., Ex. 1 (dkt. # 47-1) at 1

14  *with* Feulner Decl., Ex. 2 at 60.) In any event, the temporal nature of Plaintiff's allegations fails

15  to demonstrate any particularized wrongdoing as to any named Defendant or demonstrate how

16  Defendants' alleged placement of a COVID-19 positive inmate in his cell on December 7, 2020,

17  resulted in his contraction of the virus a week prior. Moreover, the document Plaintiff cites to

18  from PAC Lystad merely indicates that Plaintiff tested positive after a suspected exposure while

19  housed at the SCCC but does not identify the source of such exposure. (*See* Feulner Decl., Ex. 2

20  at 65.)

21      Finally, Plaintiff's cited references to the OCO Report as to the inadequacy of SCCC's

22

23  [7] Based on the record, it appears Plaintiff actually received a new cellmate on December 4, 2020. (Stephens Decl. at ¶ 3.)

REPORT AND RECOMMENDATION - 13

1    COVID-19 response does not present evidence that Defendants were deliberately indifferent to

2    his safety.[8] (Pl.'s Resp. at 6.) To the contrary, the OCO Report lauded the SCCC's efforts at

3    mitigating the spread of COVID-19. (*See* Pl.'s Decl. at 1 ("[I]t was evident that the COVID-19

4    outbreak was being taken very seriously by staff . . . SCCC are clearly taking actions to isolate

5    individuals with known positive cases of COVID-19, quarantine suspected/potential cases, and

6    to restrict movement of the rest of the compound to prevent further spread of the disease.").

7           Summary judgment requires the moving party to present evidence that, if uncontroverted

8    at trial, would entitle it to prevail as a matter of law on an issue. *UA Local 343 v. Nor-Cal*

9    *Plumbing, Inc.*, 48 F.3d 1465, 1473 (9th Cir. 1994). Because Plaintiff's allegations and evidence

10   fail to support his Eighth Amendment claims against Defendants, the Court recommends that

11   Plaintiff's Motion be denied.

12                    iii.          *Defendants' Cross-Motion*

13          In regard to Defendants' Cross-Motion, based on the record before the Court, Defendants

14   have sufficiently demonstrated that they addressed COVID-19 risks at the SCCC and attempted

15   to mitigate such risks. As noted above, DOC developed and implemented a Guideline plan to

16   mitigate the spread of COVID-19 at its facilities, including the SCCC, which continues to remain

17   in place. (Russell Decl. at ¶¶ 5, 10; *see also id.*, Ex. 1 at 2-95.) DOC's Guideline plan provides

18   for extensive COVID-19 protocols, including screening, testing, monitoring, isolation and

19   quarantine, medical care for COVID-19 positive individuals, provision of COVID-19 PPE, social

20   distancing, and prison population reduction efforts. (*Id.* at ¶¶ 5, 10, 14-32.) In addition, DOC has

21   now vaccinated the majority of DOC inmates, and all DOC staff, in positions requiring in-person

22

23   ---
[8] Defendants raise the question of whether the OCO Report could be presented in an admissible form at trial. (Defs.' Strike Mot. at 5 n.4 (citing RCW 43.06C.060).) However, because the Court concludes the OCO Report does not provide evidence of Plaintiff's claims, the Court need not address that evidentiary concern.

REPORT AND RECOMMENDATION - 14

interaction with inmates, have also been fully vaccinated.[9] (*Id.* at ¶¶ 35-42.) Though DOC did

not eliminate all risk of contracting COVID-19, Plaintiff's allegations fail to establish that

Defendants knew of, and otherwise disregarded, an excessive risk to his health or safety based on

their COVID-19 response in regard to his conditions of confinement. *See Fraihat v. U.S. Immigr.*

*& Customs Enforcement*, 16 F.4th 613, 636-38 (9th Cir. 2021) (finding detainees failed to

demonstrate ICE acted with deliberate indifference where ICE complied with CDC interim

guidance for its detention facilities, enacted system for reporting suspected or confirmed

COVID-19 cases on expedited timeframe, and enabled discretionary release of at-risk detainees);

*Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3rd Cir. 2020) ("Nor does a failure to

eliminate all [COVID-19] risk establish that the Government was deliberately indifferent to

[plaintiffs'] serious medical needs."); *see also Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir.

2020) (finding prison officials took adequate actions to mitigate risk of COVID-19 and that such

actions demonstrated a lack of deliberate indifference); *Swain v. Junior*, 961 F.3d 1276, 1287-

1289 (11th Cir. 2020) (same).

  Furthermore, based on the allegations in Plaintiff's second cause of action, it is clear from

the record that Defendants were not deliberately indifferent to his serious medical needs after his

COVID-19 diagnosis nor was he denied adequate medical treatment. As previously documented,

Plaintiff was treated immediately after he contracted COVID-19, received constant vital sign

monitoring, and was seen by SCCC medical staff at least four times across a 10-day period for

his mild COVID-19 symptoms. (*See* Feulner Decl., Ex. 2 at 47-59, 61, 63-65.) After Plaintiff

tested negative for COVID-19 on January 7, 2021, he remained monitored by Defendants for

COVID-19, received medical care for his complaints of chest pain, and has continued to receive

---

[9] Per Defendants' submitted declarations, as of November 2, 2021, 9,649 incarcerated individuals had received at least one dose of the COVID-19 vaccine. (Russel Decl. at ¶ 40.)

REPORT AND RECOMMENDATION - 15

1   medical care for his chronic medical conditions. (*Id.* at 68, 73-75, 84, 96-98, 99-105, 107-08,

2   111-14, 118-26.)

3   Plaintiff appears to attribute his medical complications to his contraction of COVID-19,

4   but it is clear from the record that Plaintiff suffers from several long-term medical conditions,

5   including COPD, and there is no evidence before the Court that his hospitalization in late

6   January 2021 came as a result of complications stemming from his contraction of COVID-19.

7   Though Plaintiff believes he should have received different medical treatment, this belief is also

8   insufficient to establish an Eighth Amendment violation. *See Franklin v. State of Oregon, State*

9   *Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (finding that deliberate indifference to a

10  serious medical need requires more than a difference of opinion between an inmate and medical

11  authorities regarding treatment).

12  In conclusion, Plaintiff fails to demonstrate that Defendants were deliberately indifferent

13  to his safety or serious medical needs, or that he was otherwise denied adequate medical

14  treatment, based on Defendants' actions. Accordingly, the Court recommends that Defendants'

15  Cross-Motion be granted.

16  ### IV.    CONCLUSION

17  For the foregoing reasons, the Court recommends that: (1) Defendants' Strike Motion

18  (dkt. # 49) be GRANTED; (2) Plaintiff's Motion (dkt. # 37) be DENIED; and (3) Defendants'

19  Cross-Motion (dkt. # 40) be GRANTED. A proposed Order accompanies this Report and

20  Recommendation.

21  Objections to this Report and Recommendation, if any, should be filed with the Clerk and

22  served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

23  and Recommendation is signed. Failure to file objections within the specified time may affect

REPORT AND RECOMMENDATION - 16

1  your right to appeal. Objections should be noted for consideration on the District Judge's

2  motions calendar for the third Friday after they are filed. Responses to objections may be filed

3  within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter

4  will be ready for consideration by the District Judge on **March 18, 2022**.

5          The Clerk is directed to send copies of this Report and Recommendation to the parties

6  and to the Honorable Benjamin H. Settle.

7          Dated this 22nd day of February, 2022.

8

9          MICHELLE L. PETERSON
           United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 17